***********
Upon review of the competent evidence of record, and the briefs and oral arguments of the parties, with reference to the errors assigned, and finding no good grounds to receive further evidence, or to rehear the parties or their representatives, the Full Commission, upon reconsideration of the evidence, affirms with modifications the Opinion and Award of the Deputy Commissioner, and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which the parties entered into at and following the hearing as: *Page 2 
 STIPULATIONS
1. Plaintiff worked for Defendant in its Lexington, North Carolina facility from February 10, 1969 through July 10, 2002.
2. Defendant is self-insured and remained self-insured throughout Plaintiff's employment. Key Risk Management Services is the third-party administrator.
3. The parties are subject to the North Carolina Workers' Compensation Act, with Defendant employing the requisite number of employees to be bound under the provisions of said Workers' Compensation Act.
4. Plaintiff had exposure to asbestos for at least 30 days in a seven-month period while employed at Defendant's Lexington facility. This stipulation applies only to this matter and should not be used for any purpose or in any litigation, other than the present matter.
5. Plaintiff's average weekly wage is $897.65, yielding a compensation rate of $601.43.
6. The parties stipulated to the following documents being admitted into evidence as stipulated exhibits:
 a. Stipulated Exhibit One: Executed Pre-Trial Agreement;
 b. Stipulated Exhibit Two: North Carolina Industrial Commission forms and filings;
 c. Stipulated Exhibit Three: Plaintiff's discovery responses;
 d. Stipulated Exhibit Four: Plaintiff's Social Security earnings report;
 e. Stipulated Exhibit Five: Plaintiff's personnel file; *Page 3 
 f. Stipulated Exhibit Six: Plaintiff's medical records;
 g. Defendant's Exhibit One: "Medical and Work History" form filled out and signed by Plaintiff on January 6, 1987;
 h. Defendant's Exhibit Two: "Respiratory Questionnaire" form concerning Plaintiff dated April 16, 2003.
 *********** ISSUES
The issues to be determined are:
1. Whether Plaintiff contracted the occupational disease of asbestosis as a result of his employment duties with Defendant, and if so, to what workers' compensation benefits is he entitled?
2. What is Plaintiff's average weekly wage?
3. Whether Plaintiff's claim is time-barred by the applicable statute of limitations?
4. Whether Plaintiff is entitled to attorney's fees under N.C. Gen. Stat. § 97-88.1?
 ***********
Based upon the competent and credible evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff is 68 years old, with a date of birth of July 8, 1942. Plaintiff received a high school diploma and later completed an auto mechanics course. Plaintiff's employment history includes various types of manual labor in construction and related industries, work as a kitchen helper, a delivery truck driver, a plumber's helper, and work in a furniture factory. Plaintiff also served in the United States Army. *Page 4 
2. In 1969, Plaintiff began working for Defendant as a glass-winder in its Lexington, North Carolina facility. Defendant manufactures coatings, chemicals, glass, and specialty materials such as optical products. Sometime around 1979, Plaintiff began working in Defendant's maintenance department as an electrician, and remained in that position until his voluntary retirement. Although the parties stipulated that Plaintiff last worked for Defendant on July 10, 2002, his actual last day of work was July 1, 2003.
3. Plaintiff's duties while working as an electrician for Defendant included maintaining machinery, installing lights, climbing ladders daily, lifting objects weighing from 25 to over 100 pounds and walking all over a large facility throughout a typical work day. Although Plaintiff wore personal protective equipment such as respiratory masks when Defendant required him to, the parties stipulated that Plaintiff had exposure to asbestos for at least 30 days in a seven-month period while employed at Defendant's Lexington facility.
4. In May 1999, Plaintiff began seeing Dr. Nilesh Vithalbhai Patel, an internal and critical care medicine specialist and pulmonologist, upon referral from his primary care physician, for complaints of increasing dyspnea. In August 1999, Dr. Patel was of the opinion that Plaintiff was suffering from a combination of obstructive and restrictive lung diseases. The restrictive lung disease affected Plaintiff's baseline lung functioning and would consistently cause Plaintiff to have dyspnea with a certain level of activity, whereas his obstructive diseases, including bronchitis and asthma, would sporadically come and go.
5. In October 1999, Dr. Patel diagnosed Plaintiff with interstitial lung disease, which is a restrictive lung disease, based upon the "ground glass" areas appearing on an August 1999 high-resolution computed tomography (CT) scan that Plaintiff underwent. While asbestosis could have been the cause of the abnormalities seen on the August 1999 high-resolution CT scan *Page 5 
and Plaintiff and Dr. Patel did discuss Plaintiff's work exposure to asbestos around that same time, the Full Commission finds that Dr. Patel did not diagnose asbestosis or inform Plaintiff of any such diagnosis at that time. According to Dr. Patel, the diagnosis of asbestosis for Plaintiff was only a "possibility" as of October 1999.
6. From October 1999 through March 2001, Plaintiff's restrictive lung disease remained symptomatically stable. In early 2001, Dr. Patel still felt there was a possibility that Plaintiff might have asbestosis. Although there is no treatment that can reverse or cure asbestosis, Dr. Patel tried treating Plaintiff with anti-inflammatories because there are other interstitial lung diseases that might respond favorably to them. Dr. Patel also noted that it can take years to determine whether a lung condition is responding to anti-inflammatories.
7. As of July 1, 2003, Plaintiff retired from his employment with Defendant. Prior to that date, Plaintiff continued to perform his customary, full-duty functions as an electrician. In the years leading up to Plaintiff's retirement, however, he began to have breathing problems that made the performance of his duties more difficult. Plaintiff had the option of pursuing disability retirement, but he chose voluntary retirement, instead.
8. After retiring, Plaintiff never undertook a search for any other employment and did not work again. According to Plaintiff, upon his retirement from Defendant he intended to search for part-time employment, but he did not follow through with this due to back problems which required back surgery in July 2004. Following Plaintiff's back surgery, he continued to have back problems and sought pain management therapy.
9. Plaintiff did not seek treatment from Dr. Patel from March 2001 through May 2007. In May 2007, Plaintiff returned to Dr. Patel due to worsening dyspnea and wheezing. Dr. Patel *Page 6 
continued to diagnose Plaintiff with both obstructive and restrictive lung diseases, and continued him on his inhaled corticosteroid therapy.
10. On January 25, 2008, Plaintiff saw Dr. Jill Ann Ohar, an internal medicine specialist and pulmonologist with Wake Forest University School of Medicine. Dr. Ohar performed pulmonary function testing, which revealed results consistent with mild restrictive lung disease. In addition, Dr. Ohar reviewed Plaintiff's chest x-ray from October 18, 2007. The film quality was not ideal, but Dr. Ohar was still able to interpret the x-ray as revealing "S/T sized opacities" in the lower lung zones bilaterally with a perfusion defect of 1/0, but no evidence of pleural abnormalities. Based upon Plaintiff's history of asbestos exposure, pulmonary function testing, and his October 18, 2007 chest x-ray, Dr. Ohar diagnosed him with asbestosis. The Full Commission finds, based upon the greater weight of the evidence, that this was the first time that a physician advised Plaintiff that he had asbestosis.
11. On April 23, 2008, Plaintiff presented to Dr. Patel with complaints of continuing dyspnea, especially when exposed to pollen or during a change in weather. Dr. Patel noted that Plaintiff had only transient improvement of his symptoms with use of his inhaler, and mild mucus production with difficulty expectorating it. A physical examination revealed diminished air movement throughout Plaintiff's lungs, minimal crackles in the lung bases, and minimal wheezing upon expiration. Plaintiff and Dr. Patel discussed Plaintiff's history of exposure to asbestos at work. Based upon Plaintiff's history of exposure to asbestos at work, an appropriate latency period, and his interstitial lung disease, Dr. Patel diagnosed Plaintiff with asbestosis.
12. On April 23, 2008, Plaintiff executed a Form 18B claiming an occupational disease related to asbestos exposure. The Form 18B listed January 25, 2008 as the date upon which Plaintiff first learned from a physician that he had asbestosis. On May 21, 2008, *Page 7 
Defendant executed a Form 61 denying Plaintiff's claim for workers' compensation benefits for occupational exposure to asbestosis.
13. On October 9, 2009, Plaintiff underwent an independent medical evaluation with Dr. Douglas George Kelling, Jr., an internal medicine specialist and pulmonologist. Dr. Kelling interpreted a previous chest CT scan as revealing several small calcified and non-calcified pleural plaques suggestive of asbestos exposure, but no evidence of pulmonary fibrosis. Pulmonary function testing revealed mild restrictive lung disease; however, Dr. Kelling felt that the testing revealed a normal diffusion capacity at 77 percent and no evidence of obstructive lung disease. Based upon Dr. Kelling's testing, examination, and review of Plaintiff's medical and work history, he concluded that Plaintiff had asbestos-related pleural plaques, but not asbestosis. Dr. Kelling further opined that based upon Plaintiff's forced vital capacity of 63 percent, he has 10 to 25 percent mild impairment of the whole person due to his asbestos exposure.
14. On December 22, 2009, Dr. Patel ordered another pulmonary function test, which revealed that Plaintiff was still suffering from mixed restrictive and obstructive lung diseases, and had a diffusion capacity of 47 percent. According to Dr. Patel, diffusion capacity measures the absorption rate of oxygen from the air sacs in the lungs, and a rate of over 70 percent is normal. Clinically, a low diffusion capacity results in dyspnea. Dr. Patel was of the opinion that Plaintiff's low diffusion capacity is probably related to his asbestosis and his obstructive lung disease, and that Plaintiff's 47 percent diffusion capacity correlates with a 25 to 50 percent impairment of the whole body, which is in the range of moderate impairment. Dr. Patel also noted that Plaintiff's diffusion capacity, as shown on pulmonary function testing, dropped from 66 percent in 1999 to 47 percent in 2009. *Page 8 
15. At Dr. Patel's deposition, he explained that prior to April 2008, he could not definitively diagnose Plaintiff with asbestosis. When Dr. Patel began his treatment of Plaintiff in May 1999, he wanted to monitor and observe him for a while before concluding that his restrictive lung disease was in fact asbestosis. As Dr. Patel characterized it, Plaintiff's diagnosis was a "work in progress" over the years. Because there is no cure for asbestosis, Dr. Patel concluded that it did not make any difference medically whether he assigned such a diagnosis in 1999, 2001, or 2008.
16. According to Dr. Patel, a diagnosis of asbestosis only requires two out of the following three factors: radiographic evidence, pulmonary function testing evidence, and adequate exposure history. Moreover, Dr. Patel felt that his treatment of Plaintiff over several years provided him with a clinical familiarity with Plaintiff. Therefore, Dr. Patel felt that Plaintiff's pulmonary function testing results and asbestos exposure history from working for Defendant, combined with his clinical experience with Plaintiff, were sufficient bases upon which to diagnose him with asbestosis.
17. Dr. Patel opined that Plaintiff's asbestosis is a significant contributing factor in his breathing impairment. Dr. Patel was also of the opinion that Plaintiff could not perform the duties of his former employment with Defendant as an electrician based upon the results of his December 22, 2009 pulmonary function testing, especially the diffusion capacity results. Plaintiff's breathing impairment, as measured by the December 22, 2009 pulmonary function testing, would prevent him from doing any vigorous activities; however, Dr. Patel believed that Plaintiff could perform the duties of a sedentary desk job. According to Dr. Patel, the most compelling finding with regard to Plaintiff's capacity to work is his impaired diffusion capacity. The Full Commission gives great weight to the opinion testimony of Dr. Patel. *Page 9 
18. At Dr. Ohar's deposition, she opined that Plaintiff's history of occupational asbestos exposure was sufficient to cause pulmonary disease. Dr. Ohar was also of the opinion that the pulmonary function tests Plaintiff underwent on January 25, 2008 revealed mild restrictive lung disease, and that Plaintiff had interstitial scarring, based upon her review of the October 18, 2007 chest x-ray. In addition, Dr. Ohar opined that Plaintiff's work-related asbestosis was the cause of his restrictive lung disease. The Full Commission gives great weight to the opinion testimony of Dr. Ohar.
19. At Dr. Kelling's deposition, he agreed that Plaintiff had a significant asbestos exposure history that was sufficient to cause asbestos-related disease. Dr. Kelling also felt that Plaintiff's October 9, 2009 pulmonary function testing revealed mild restrictive lung disease, but a normal diffusion capacity. According to Dr. Kelling, Plaintiff's October 9, 2009 chest CT scan revealed evidence of pleural plaques consistent with asbestos exposure but showed no evidence of interstitial fibrosis. Because Dr. Kelling feels that it is not appropriate to diagnose asbestosis based only upon a patient's asbestos exposure history and pulmonary function testing results when a chest CT scan fails to reveal evidence of pulmonary fibrosis, he could not say that Plaintiff had evidence of asbestosis. Dr. Kelling opined, based upon his interpretation of Plaintiff's October 9, 2009 chest CT scan, that Plaintiff did not have asbestosis. Dr. Kelling indicated that one can have pleural plaques without having asbestosis.
20. Dr. Courtney Crim is an internal medicine specialist and pulmonologist who is also a certified B-reader. Plaintiff retained Dr. Crim to review Plaintiff's October 18, 2007 chest x-ray and perform a B-reading of it. Dr. Crim was of the opinion that Plaintiff's October 18, 2007 chest x-ray revealed parenchymal abnormalities consistent with pneumoconiosis, including small "S" and "T" shaped opacities in the lower lung zones which he scored as "1/0," which is *Page 10 
the lowest perfusion rating assigned. A rating lower that "1/0" would be considered a normal reading. According to Dr. Crim, the findings he observed on Plaintiff's October 18, 2007 chest x-ray were consistent with asbestosis, given a history of exposure to asbestos sufficient to cause disease. However, Dr. Crim agreed that he could not diagnose Plaintiff with asbestosis based solely upon his B-reading because B-readings are not meant to be diagnostic standing alone. The Full Commission gives great weight to the opinion testimony of Dr. Crim regarding his findings of the presence of parenchymal abnormalities consistent with pneumoconiosis on Plaintiff's October 18, 2007 chest x-ray.
21. Dr. Philip Cary Goodman is a radiologist with a subspecialty in thoracic imaging and is also a certified B-reader. Defendant retained Dr. Goodman to review Plaintiff's October 18, 2007 chest x-ray and perform a B-reading of it. Dr. Goodman opined that Plaintiff's October 18, 2007 chest x-ray did not reveal any parenchymal or pleural abnormalities consistent with pneumoconiosis and therefore did not reveal any evidence of asbestosis.
22. Dr. Patel indicated that pulmonary function tests are "snapshots" of a patient's lung capacity at the particular time they are administered. A pulmonary function test is very difficult for a patient to fake or manipulate because the patient must produce several trials that are consistent in effort in order for the test to be valid. The medical expert witnesses did not question the validity of any pulmonary function testing that Plaintiff underwent. To the extent that the pulmonary function testing Plaintiff underwent on October 9, 2009 during Dr. Kelling's evaluation produced a diffusion capacity rating significantly greater than the readings consistently seen in Dr. Patel's testing, the Full Commission finds that the October 9, 2009 pulmonary function testing result was a deviation from Plaintiff's usual, baseline readings. *Page 11 
23. The Full Commission gives greater weight to the opinion testimony of Dr. Patel, Dr. Ohar, and Dr. Crim over any contrary opinions of Dr. Kelling and Dr. Goodman. As Plaintiff's treating pulmonologist for over ten years, Dr. Patel is in the best position to be able to observe the progression of Plaintiff's respiratory condition over a long period of time. The Full Commission finds Dr. Patel's testimony to be objective and persuasive.
24. Mr. Stephen D. Carpenter is a certified rehabilitation counselor, disability management specialist, and case manager. Plaintiff retained Mr. Carpenter to evaluate Plaintiff's vocational capacity. According to Mr. Carpenter, Plaintiff's transferable skills from his many years as an electrician with Defendant apply generally to employment that would be classified in the medium to heavy-duty categories. Mr. Carpenter was of the opinion that Plaintiff's physical limitations, as outlined in his medical records, particularly his problems with dyspnea, would significantly affect his ability to perform medium or heavy-duty work, and even light-duty or sedentary work. Mr. Carpenter further opined that Plaintiff had few, if any employment skills that would transfer into the light-duty or sedentary work categories. Based upon the results of the testing that Mr. Carpenter administered to Plaintiff, as well as his age, education, lack of transferable skills below the medium-duty level, and medical condition as outlined in the medical records of Dr. Patel and other physicians, including his dyspnea, fatigue, problems with stamina, upper extremity dexterity deficits, and general deficits in physical capacity, Mr. Carpenter opined that Plaintiff was not currently employable. Mr. Carpenter did not give a specific date or time period in which he felt that Plaintiff became disabled from employment, and deferred any specific medical opinions regarding Plaintiff's disability to the treating physicians. The Full Commission gives great weight to the opinion testimony of Mr. Carpenter regarding Plaintiff's current employability. *Page 12 
25. As of the date of the hearing before the Deputy Commissioner, Plaintiff was experiencing dyspnea all the time. According to Plaintiff, he cannot take long walks or play with his grandchildren, and he does not believe that he would be able to perform the duties of his previous position with Defendant in his current physical condition because of his diminished breathing capacity. The Full Commission finds Plaintiff's testimony concerning the nature and description of his employment duties as an electrician for Defendant, as well as his description of the nature and circumstances of his respiratory complaints to be credible, and gives such testimony great weight.
26. The Full Commission finds, based upon the greater weight of the evidence, that Plaintiff's workers' compensation claim is not barred by the applicable statute of limitations. Although Plaintiff had dyspnea and other respiratory problems as early as 1999 when he began to seek treatment from Dr. Patel, no physician advised Plaintiff that he had asbestosis until January 25, 2008, when Dr. Ohar both diagnosed this condition and discussed with Plaintiff that his employment was a likely cause of this diagnosis. Plaintiff filed a Form 18B on April 23, 2008 giving notice of his occupational injury claim, the same day that Dr. Patel also diagnosed him with asbestosis.
27. The Full Commission finds, based upon the greater weight of the evidence, that Plaintiff contracted the occupational disease of asbestosis, and that Plaintiff's employment duties as an electrician for Defendant were significant causative factors in the development of his asbestosis.
28. The medical treatment Plaintiff received from Dr. Patel and Dr. Ohar with respect to his asbestosis was reasonably required to effect a cure, to give relief, and/or to lessen his period of disability with respect to his compensable occupational disease of asbestosis. The Full *Page 13 
Commission further finds that any future treatment recommended by Dr. Patel with respect to Plaintiff's compensable occupational disease of asbestosis is reasonably necessary.
29. The Full Commission finds, based upon the greater weight of the evidence, that Dr. Patel should be designated as Plaintiff's authorized treating physician.
30. With respect to when Plaintiff's disability began, the Full Commission finds, based upon the greater weight of the evidence, Plaintiff has proven that he became disabled as a result of his asbestosis beginning December 22, 2009. At the time of Plaintiff's voluntary retirement on July 1, 2003, he did not have any asbestos related disability. Plaintiff did not establish that he was disabled at the time Dr. Ohar diagnosed him with asbestosis on January 25, 2008. Plaintiff has proven he was disabled as of December 22, 2009 a result of his asbestosis. According to Dr. Patel, Plaintiff's December 22, 2009 pulmonary function testing which indicated that his diffusion capacity was 47 percent correlated to a 25 to 50 percent impairment of the whole body, which is in the range of moderate impairment, and would render him unable to perform the duties of his former employment with Defendant as an electrician or from doing any vigorous activities.
31. Based upon the greater weight of the evidence, the Full Commission finds that Plaintiff has been temporarily totally disabled from December 22, 2009 through the present and continuing as a result of his employment related asbestosis. Dr. Patel was of the opinion that Plaintiff could perform the duties of a sedentary desk job; however, the Full Commission finds that it would be futile for him to search for such employment, given his age, education, work experience, lack of transferable employment skills and his physical impairments related to asbestosis and other medical conditions. *Page 14 
32. The Full Commission finds, based upon the greater weight of the evidence, that Defendant had reasonable grounds to defend this claim, as the medical evidence was in dispute as to whether Plaintiff had asbestosis.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff's workers' compensation claim is not barred by the two-year time limit for filing an occupational disease claim. No physician advised Plaintiff that he had the occupational disease of asbestosis until January 25, 2008, when Dr. Jill Ann Ohar both diagnosed asbestosis and discussed with Plaintiff that his employment was a likely cause of this diagnosis. Plaintiff filed his claim for compensation for occupationally related asbestosis on April 23, 2008, the same day Dr. Patel also diagnosed him with work related asbestosis. N.C. Gen. Stat. § 97-58 (2010);Terrell v. Terminix Services, Incorporated,142 N.C. App. 305, 542 S.E.2d 332 (2001).
2. Defendant stipulated that Plaintiff had exposure to asbestos for at least 30 days in a seven-month period while employed at Defendant's Lexington, North Carolina facility. There is no evidence of record that Plaintiff worked anywhere else after his employment with Defendant ended. Therefore, Plaintiff had his last injurious exposure to asbestos while working for Defendant as an electrician. N.C. Gen. Stat. § 97-57 (2010).
3. Plaintiff established by the greater weight of the evidence that as a result of his employment with Defendant as an electrician, he contracted asbestosis, an occupational disease. N.C. Gen. Stat. § 97-53(24) (2010). The opinion testimony of Dr. Nilesh Vithalbhai Patel and *Page 15 
Dr. Ohar, which the Full Commission has given great weight, is sufficient to meet Plaintiff's burden of proving that his employment duties, more likely than not, caused the development of his asbestosis. Id.
4. The medical treatment Plaintiff received with respect to his asbestosis was reasonably necessary in order to effect a cure, to give relief, and/or to lessen his period of disability, and Defendant is obligated to pay for such treatment. Dr. Patel is hereby designated as Plaintiff's authorized treating physician. N.C. Gen. Stat. §§ 97-2(19), 97-25, 97-25.1 (2010).
5. From December 22, 2009 through the present and continuing, Plaintiff has been temporarily totally disabled from employment as a result of his compensable occupational disease of asbestosis. Although Dr. Patel was of the opinion that Plaintiff could perform the duties of a sedentary desk job, it would be futile for him to search for such employment, given his age, education, work experience, lack of transferable employment skills and his physical impairments related to asbestosis and other medical conditions. Therefore, Plaintiff is entitled to temporary total disability compensation in the amount $601.43 per week from December 22, 2009 through the present and continuing. N.C. Gen. Stat. § 97-29 (2010); Russell v. Lowes Prod.Distrib., 108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993).
6. Defendant had reasonable evidentiary and legal grounds to defend this claim, as the medical evidence was in dispute as to whether Plaintiff had asbestosis. N.C. Gen. Stat. § 97-88.1 (2010).
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission makes the following:
 AWARD *Page 16 
1. Subject to a reasonable attorney's fee herein approved, Defendant shall pay temporary total disability compensation to Plaintiff at the rate of $601.43 per week from December 22, 2009 through the present and continuing, or until further Order of the North Carolina Industrial Commission. Any accrued compensation shall be paid in a lump sum.
2. Defendant shall pay all medical expenses incurred or to be incurred as a result of Plaintiff's compensable asbestosis for so long as such evaluations, examinations, and treatments may reasonably be required to effect a cure, to give relief, and/or to lessen his period of disability, in accordance with the provisions of the North Carolina Workers' Compensation Act.
3. Dr. Nilesh Vithalbhai Patel is hereby designated as Plaintiff's authorized treating physician.
4. A reasonable attorney's fee of 25 percent of the compensation due Plaintiff under paragraph one is approved for Plaintiff's counsel, to be deducted and paid directly to Plaintiff's counsel from the compensation due Plaintiff and thereafter every fourth compensation check.
5. Defendant shall pay the costs of these proceedings.
This the ___ day of February 2011.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/___________________ DANNY LEE McDONALD COMMISSIONER *Page 17 
 S/___________________ STACI T. MEYER COMMISSIONER *Page 1